1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    DAVID DEAN DICKEY,                          No.  2:13-cv-2463-EFB

11              Plaintiff,

12         v.                                      ORDER

13    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security
14
                Defendant.
15

16

17         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18    ("Commissioner") denying his application for a period of disability and Disability Insurance

19    Benefits ("DIB") under Title II of the Social Security Act.  The parties have filed cross-motions

20    for summary judgment.  For the reasons discussed below, plaintiff's motion is denied and

21    defendant's motion is granted.

22    I.      BACKGROUND

23         Plaintiff filed an application for a period of disability and DIB on May 21, 2010, alleging

24    that he had been disabled since January 1, 2010.  Administrative Record ("AR") 134-140.

25    Plaintiff's application was denied initially and upon reconsideration.  *Id.* at 73-76, 84-86.  On July

26    2, 2012, a hearing was held before administrative law judge ("ALJ") Wynne O'Brien-Persons.

27    *Id.* at 31-70.  Plaintiff was represented by counsel at the hearing, at which he and a vocational

28    expert ("VE") testified.  *Id.*

                                                    1

On July 19, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1]  *Id.* at 18-26.  The ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

* * *

/////

/////

_____

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(a)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3. The claimant has the following severe impairments: degenerative changes of the cervical and lumbar spine, shoulder pain of an unknown etiology, obesity, asthma, sleep apnea, and depression (20 CFR 404.1520(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

   * * *

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with no more than occasional climbing ladders, ropes, or scaffolds; no more than occasional crawling; no more than frequent kneeling; no more than frequent right-sided overhead reaching; no more than frequent left-sided gross manipulation; no exposure to concentrated heat or hazards; and not even moderate exposure to pulmonary irritants.

   * * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 13, 1968 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

    * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 20-26.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 14, and on September 23, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-5.

3

1 II.    LEGAL STANDARDS

2        The Commissioner's decision that a claimant is not disabled will be upheld if the findings

3 of fact are supported by substantial evidence in the record and the proper legal standards were

4 applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

5 *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

6 180 F.3d 1094, 1097 (9th Cir. 1999).

7        The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8 conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

9 more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

10 Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

11 conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

12 *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13        "The ALJ is responsible for determining credibility, resolving conflicts in medical

14 testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

15 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

16 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

17 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

18 III.    ANALYSIS

19        Plaintiff contends that the ALJ erred by (1) improperly discrediting the opinion of

20 plaintiff's treating therapist; and (2) failing to provide a proper rationale for discounting

21 plaintiff's subjective complaints. ECF No. 14 at 10-16.

22        A.    The ALJ Properly Discounted Plaintiff's Treating Therapist's Opinion

23        Plaintiff argues that the ALJ improperly discredited the opinion of Marci Hinchey,

24 plaintiff's treating therapist.[2] ECF No. 14 at 10-13. Ms. Hinchey completed a mental assessment

25 of plaintiff on August 10, 2011. AR 616-619. She diagnosed plaintiff with major depression and

26 post-traumatic stress disorder, based on her clinical findings of depressed mood. *Id.* at 616. Ms.

27 
       _____
28        [2] The record indicates that Ms. Hinchey has a master's degree in Marriage Family
Therapy ("MFT") and is a licensed Alcohol and Drug Counselor. AR 616.

4

1   Hinchey opined that plaintiff had a fair ability to deal with the public; use judgment; understand,

2   remember, and carry out detailed and simple job instructions.  *Id.* at 616-617.  She also opined

3   plaintiff had a poor ability to deal with work stress; function independently; maintain

4   attention/concentration; and understand, remember, and carry out complex job instructions.  *Id.*

5   Ms. Hinchey further opined that plaintiff needed a fifteen minute break every hour and could

6   manage benefits in his own best interest.  *Id.* at 618-619.  Plaintiff contends that the ALJ failed to

7   provide legally sufficient reasons for discrediting those opinions.  ECF No. 14 at 10-13.

8           The applicable regulations provide that a therapist, although a treating medical source, is

9   viewed as an "other source" and not as an "acceptable medical source."  SSR 06-03p, 2006 SSR

10  LEXIS 5; 20 C.F.R. § 404.1513(d)(1); *See Stephens v. Colvin*, 2014 U.S. Dist. LEXIS 170423, at

11  *12 (N.D. Cal. Dec. 9, 2014) (holding plaintiff's therapist, MFT, qualifies as an "other source.").

12  An ALJ need only give germane reasons for rejecting the opinion from an "other source."  *Molina*

13  *v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Inconsistency with other evidence in the record is

14  a germane reason for an ALJ to discount testimony.  *See Bayliss v. Barnhart*, 427 F.3d 1211,

15  1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001) ("One reason for which an ALJ

16  may discount lay testimony is that it conflicts with medical evidence.").

17          Here, the ALJ accorded partial weight to Ms. Hinchey's assessment "insofar that it

18  acknowledged some concentration problems," but partially discounted the opinion as the overall

19  record does not demonstrate that plaintiff's limitations in concentration and persistence preclude

20  him from performing simple work tasks.  AR 24.  The ALJ's finding is supported by substantial

21  evidence in the record.  In a Function Report completed by plaintiff, he stated he has four kids,

22  ages six to seventeen, and two dogs that he helps care for.  *Id.* at 195.  Plaintiff also indicated that

23  he does laundry, mows the lawn, drives, and goes shopping once a week with his wife for one to

24  three hours at a time.  *Id.* at 196-197.  Plaintiff further indicated that he is able to pay bills, handle

25  a savings account, and use a checkbook/money orders.  *Id.* at 197.  These activities, which were

26  discussed by the ALJ, support her finding that plaintiff's impairments in concentration and

27  persistence would not preclude unskilled work as opined as opined by Ms. Hinchey.

28  /////

1    Plaintiff contends that "the ALJ failed to even reference or comment on Therapist

2    Hinchey's opinion that Mr. Dickey would require at least a fifteen minute break every hour."

3    ECF. No. 14 at 11.  As plaintiff adds that "there is a requirement to consider all relevant evidence

4    in an individual's case record, [and] the case record should reflect the consideration of opinions

5    from medical sources who are not 'acceptable medical sources' . . . who have seen the claimant in

6    their professional capacity."  *Id.* (quoting SSR 06-03p, 2006 SSR LEXIS 5).  Plaintiff appears to

7    suggest that the ALJ could not have given a germane reason for rejecting this particular opinion—

8    requiring breaks every fifteen minutes—because it was not referenced in her decision.  The

9    argument overlooks the fact that the ALJ rejected Ms. Hinchey's opinion that plaintiff lacked the

10   ability to maintain concentration and persistence through simple work tasks, which necessarily

11   includes rejecting her opinion that plaintiff requires a break every fifteen minutes due to those

12   concentration impairments.  Although the ALJ's decision does not recite Ms. Hinchey's opinion

13   that plaintiff would need breaks every fifteen minutes, it is clear that he rejected it as inconsistent

14   with the overall record.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (an ALJ

15   need not recite "magic words" for the decision to be valid and a reviewing court may draw

16   inferences relevant to the ALJ's analysis "if those inferences are there to be drawn").[3]

17   The ALJ gave a germane reason for discounting Ms. Hinchey's opinion, and therefore did

18   not err in rejecting her opinion.

19   B.    The ALJ Properly Rejected Plaintiff's Subjective Complaints and Credibility

20   Plaintiff next argues that the ALJ erred by failing to give sufficient reasons for

21   discrediting his subjective complaints.  ECF No. 14 at 14-16.

22   In evaluating whether subjective complaints are credible, the ALJ should first consider

23   objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

24   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ may

25

26   [3] Plaintiff also argues that as a result of improperly discrediting Ms. Hinchey's opinion,
     the ALJ failed to find plaintiff disabled based on the testimony of the VE.  ECF No. 14 at 10-13.

27   This argument is based solely on plaintiff's contention that the ALJ improperly rejected his
     treating therapist's opinions.  As explained above, the ALJ did not err in rejecting this evidence.

28   Accordingly, the ALJ was not required to rely on the VE testimony that included such limitations.

1    then consider the nature of the symptoms alleged, including aggravating factors, medication,

2    treatment and functional restrictions. *See id.* at 345-347.  The ALJ also may consider: (1) the

3    applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

4    testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

5    prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284.

6    Work records, physician and third party testimony about nature, severity and effect of symptoms,

7    and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec.*

8    *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

9    debilitating medical problem may be a valid consideration by the ALJ in determining whether the

10   alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of*

11   *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

12   observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

13   substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

14   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

15   reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d

16   at 599.

17          Plaintiff testified that he suffers from serious sleep apnea, depression, anxiety, chronic

18   asthma, back and neck pain, and swelling of the legs. AR 36, 40-44.  He testified that he often

19   only gets three hours of sleep a night due to his sleep apnea, his legs swell three to four times per

20   week, and he has been in the hospital about twenty-five times in the past three years mainly due

21   to his asthma. *Id.* at 41-42, 44.  Plaintiff stated that his sleep apnea causes him to fall asleep

22   while driving, and that he has "some type of pain all the time." *Id.* at 39, 46.  Plaintiff also

23   testified that he can lift ten to twelve pounds, but regularly drops things, can climb stairs and

24   swim, stand for fifteen minutes at a time, sit for thirty-five minutes at a time, and is limited in

25   kneeling, squatting, and overhead reaching. *Id.* 46-49.  However, plaintiff also admitted that he

26   walks two miles with a friend about three to four times per week; can generally take care of his

27   personal needs, unless his back goes out, which occurs three to four times per year; and is able to

28   drive, go out alone, vacuum, make the bed, garden, go to church and to his kids' events, and go

grocery shopping with his wife, although he usually rides in the electric cart while at the grocery store. *Id.* at 46, 50-53. Plaintiff further testified that he has extensive memory and concentration issues, and feels that his mental and physical impairments would preclude him from working a normal work week. *Id.* at 55-56.

The ALJ found that plaintiff's statements regarding the extent of his limitations were not fully credible. First, the ALJ found that plaintiff's reported daily activities contradict the extent of limitations he alleged. AR 22; *See Smolen*, 80 F.3d at 1284 (an ALJ may rely on inconsistent testimony in assessing a claimant's credibility). As previously discussed, plaintiff testified that he is capable of performing housework, caring for his kids, driving, gardening, and going for two mile long walks three to four times per week. *Id.* at 46-53. However, in the Function Report, plaintiff also testified that he "can't bend, walk, [or] lift anything," does "not get along with any of [his] immediate [neighbors,] and [has] paranoid thoughts of getting along with friends." *Id.* at 199. Plaintiff's statements that he is incapable of bending, walking, or lifting and that he doesn't get along with neighbors and is paranoid of his friends is not consistent with his testimony of two mile walks three to four times per week with a friend. These statements are also inconsistent with plaintiff's reported activities, such as caring for his kids and pets, driving, gardening, and performing housework.

Plaintiff claims that the "ALJ's characterization of Mr. Dickey's daily activities . . . [is] not accurate." ECF No. 14 at 15. He further argues that "mere evidence of the ability to perform housework, shop alone, or go to the doctor was not inconsistent with a finding of disability." *Id.* at 16. Plaintiff's argument mischaracterizes the ALJ's basis for discrediting his subjective complaints. The ALJ did not broadly find that plaintiff's reported daily activities are inconsistent with disability. Rather, he focused on specific alleged limitations and the claimed severity of those limitations and found that plaintiff's reported activities contradicted other allegations, including his claim that he had significant limitations in standing, walking, sitting, and postural movement. *See* AR 22; *Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent

/////

8

1   that they contradict claims of a totally debilitating impairment.").  As the ALJ's finding was

2   supported by substantial evidence, there was no error in discounting plaintiff's testimony.

3       Furthermore, the ALJ provided other clear and convincing reasons for rejecting plaintiff's

4   testimony, none of which are contested by plaintiff.  The ALJ discredited plaintiff's subjective

5   complaints for the additional reason that they are not supported by objective medical evidence.

6   *Id.* at 23.  While an ALJ may not rely solely on a lack of objective medical evidence to support an

7   adverse credibility finding, it is a relevant consideration in assessing credibility.  *See Moisa v.*

8   *Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 595.  Although plaintiff went

9   to the hospital several times from 2010 to 2012 for his asthma, the clinical findings on each visit

10  were minimal and the results of plaintiff's x-rays, respiratory work up, cardiovascular tests were

11  unremarkable with no acute findings.  AR 474, 478, 508-509, 519, 520, 557, 570.

12      The ALJ also noted that plaintiff demonstrated improvement in his symptoms with

13  treatment.  *Id.* at 23.  Plaintiff has treated his back pain with pain medication, nerve root block

14  injections, and radiofrequency therapy.  After plaintiff's first radiofrequency treatment in 2009 he

15  reported a forty percent reduction in pain and that his activity level was "quite good."  *Id.* at 282.

16  It was also noted in January 2012, that the occasional lumbar epidurals he receives "seem to

17  benefit him enormously."  *Id.* at 706.  Further, plaintiff's treating physician, Dr. Held, noted that

18  plaintiff's "sleep apnea has responded well to treatment" and that plaintiff's "prognosis for his

19  sleep apnea would be considered good as is his prognosis for his asthma. . . ."  *Id.* at 621.  The

20  ALJ was permitted to find that plaintiff's allegations were not fully credible in light of evidence

21  showing that plaintiff's impairments were managed with medication.  The ALJ permissibly found

22  that this medical evidence did not support plaintiff's allegations of disabling impairments.

23      Lastly, the ALJ discounted plaintiff's testimony of debilitating mental impairment as it

24  was inconsistent with the minimal treatment received.  *Id.* at 23-24.  Evidence of "conservative

25  treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment.

26  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d

27  1428, 1434 (9th Cir. 1995)).  At the hearing on July 2, 2012 plaintiff  testified that he "just finally

28  got into a . . .  psychiatrist."  *Id.* at 41.  However, for the two years prior to the hearing, plaintiff's

9

1    alleged severe mental impairments were treated solely with depression medication, which were

2    taken intermittently, and inconsistent therapy sessions with a counselor. *Id.* at 1004, 1006, 1012,

3    1028, 1030.  Thus, the ALJ properly found such minimal treatment was inconsistent with

4    plaintiff's testimony of severe mental impairments.

5              Accordingly, the ALJ gave numerous clear and convincing reasons for discounting

6    plaintiff's subjective complaints.

7    IV.    <u>CONCLUSION</u>

8              The ALJ applied the proper legal standard and supported his decision with substantial

9    evidence.  Accordingly, it is hereby ORDERED that:

10             1.  Plaintiff's motion for summary judgment is denied;

11             2.  The Commissioner's cross-motion for summary judgment is granted; and

12             3.  The Clerk is directed to enter judgment in the Commissioner's favor.

13   DATED:  March 30, 2015.

14

15                                                EDMUND F. BRENNAN
                                                 UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28